Holmes *v.* Cheney.

5-2652                                    352 S. W. 2d 943

Opinion delivered January 22, 1962.

*D. D. Panich,* for appellant.

*Frank Holt,* Attorney General; *Mehaffy, Smith* and *Williams* by *William J. Smith, Herschel H. Friday, Jr.,* and *James E. Westbrook,* for appellee.

Paul Ward, Associate Justice.   This litigation was initiated by a taxpayer to test the constitutionality of Act 38 of the First Extraordinary Session of the 1961

Legislature. Said Act provides for the erection of a Revenue Department Building for the State. The trial court held the Act constitutional, and this appeal by the taxpayer follows.

*Substance of the Act.* The portions of the Act material to this litigation are as follows: Sections 2, 3, 4 and 5 create the "Arkansas Revenue Department Building Commission" (referred to as the "Commission"), composed of the Commissioner of Revenues, the Secretary of State and three members appointed by the Governor, and also provide per diem for attendance of meetings, and terms of office; Section 6 authorizes the Commission to select a site for the building on the Capitol grounds, to construct and equip the building, and to obtain the necessary funds therefor by the issuance of Revenue Bonds as thereafter provided, to house in the building the State Revenue Department and other state agencies, to rent available space, and to take such other action consistent with law to carry out the intent and purpose of the Act; Sections 10 and 11 declare all monies received from the charge of $1.00 for each motor vehicle certificate of title (as already provided by law) and all monies received from the collection of $5.00 for the recording of all leases (by the State) of oil, gas, gravel, coal, etc., (as provided by the Act) to be "cash funds" not to be deposited in the State Treasury but in the "Revenue Department Building Fund" created by the Act; Section 12 creates a Trust Fund to be known as the "Revenue Department Building Bond Fund" into which money shall be transferred from time to time (as provided in detail in the Act) from the Revenue Department Building Fund. The money placed in the Trust Fund is pledged and is to be used to retire principal and interest on the bonds later provided for in the Act. This Section further provides that from time to time (under restrictions specified) funds (in excess of what is needed) shall be transferred from the Trust Fund to the State Treasury, and further provides that when the bonds are retired all the money in the Trust Fund shall be transferred to the State Treasury; Section 13 author-

izes the Commission to issue Revenue Bonds not to exceed $1,600,000 bearing not to exceed 4½% interest, and to be sold by the Commission pursuant to the detailed provisions set forth in the Act; Section 14 provides that said bonds shall be general obligations only of the Commission and "in no event shall they constitute an indebtedness for which the faith and credit of the State of Arkansas or any of its revenues are pledged"; Section 15 reiterates and emphasizes the provisions heretofore set forth, stating that the bonds are secured by a pledge of the gross revenues mentioned in Sections 10 and 11 and the rentals before mentioned, and declares said revenues to be cash funds; Section 16 authorizes the several officers, departments, agencies and commissions of the State to enter into rental agreements with the Commission for space in the building to be erected. The other sections of the Act deal with who can purchase the bonds, the details of constructing the building, and declare the Act shall be liberally construed and its provisions to be severable.

Appellant urges a reversal, contending: I. Funds in the State Treasury are, under Act 38, being paid out without an appropriation by the General Assembly contrary to the Constitution; II. Since Act 38 does not have the approval of the electors of the State it violates Amendment No. 20 of the Constitution; III. Act 38 constitutes a delegation of legislative power to the Commission and, therefore, violates Amendment No. 7 to the Constitution, and also Article 4, Sections 1 and 2 of the Constitution; and IV. Act 38 violates the Federal and State Constitutions in that the charges for the certificates are unequal and discriminatory.

We will now discuss the above mentioned contentions in numerical order without repeating the same in full.

I. Appellant quotes Article 5, § 29 and Article 16, § 12 which, in substance, provide that no money shall be drawn from the State Treasury except by appropriation, and then for only a two-year period. He then points out

that under Act 38 the Commission is authorized to use the accumulation of funds to retire the bonds sans an appropriation by the legislature during the life of the bonds—20 years. In making this contention appellant overlooks the fact that the above sections of the Constitution refer to money in the State Treasury, and also the further fact that the funds provided in Act 38 never at any time reach the State Treasury. This being true there is no constitutional requirement that the funds in Act 38 be appropriated. See: *Gipson* v. *Ingram,* 215 Ark. 812, 223 S. W. 2d 595, and *McArthur* v. *Smallwood,* 225 Ark. 328, 281 S. W. 2d 428.

However, in this same connection, appellant contends that the funds in this case should, and must, be placed in the State Treasury since they amount to a tax, and that calling them "cash funds" is of no avail. This latter contention has also been resolved against appellant by the two above mentioned decisions of this court. To make this point clear it is in order to compare briefly the case under consideration with the said two decisions.

In the *Gipson* case the so-called "cash funds" were "derived from such sources as students' fees, sale of farm produce, dormitory charges, etc." in connection with the operation of the State University and the State Colleges. As stated in that case "The question is, whether the Constitution of Arkansas requires that all such cash funds be deposited into the State Treasury". It was held that such funds need not be so deposited. Appellant says, however, there is a clear distinction between the nature of the funds in the *Gipson* case and the funds involved here, but he does not, we think, explain such distinction, and we see none that is vital to the issue. If, however, there be any lingering doubt about such distinction it was erased completely, against appellant, in the *McArthur* case previously cited. In that case which upheld Act 375 of 1955 providing for the Justice Building, the funds involved were unquestionably comparable to the funds involved in Act 38. Said Act 375 "taxed" as costs $1.00 in each circuit, chancery, and

probate civil case and the same amount for each conviction in criminal cases, while Act 38 funds are derived from $1.00 paid for each certificate of title to a motor vehicle and from the recording of State leases. Also, under both Acts, rentals from the proposed buildings comprised a part of the funds.

It is our opinion therefore that all of appellant's objections under this point have been successfully met by the decisions in the *Gipson* case and the *McArthur* case.

II.   We find no merit in appellant's contention that Act 38 violates Amendment No. 20 to the Constitution of Arkansas. This Amendment, in substance and in all material parts, prohibits the issuance of any bonds *pledging the full faith and credit of the State* except when authorized by a vote of the qualified electors. Act 38 specifically provides that the bonds issuable by the Commission will not be supported or guaranteed by the full faith and credit of the State, and further provides that they can be paid only from the special funds heretofore described.

III.   Neither do we find any merit in appellant's contention that Act 38 delegates legislative powers to the Commission contrary to Article 4 §§ 1 and 2 or to Amendment No. 7 to the Constitution. Sections 1 and 2 provide for three distinct departments of government and specify that neither shall exercise power belonging to the other. Amendment No. 7 is the "Initiative and Referendum" amendment which supersedes Article 5, § 1 of the Constitution and contains nothing to add support to appellant's contention here. This identical contention by appellant here was made in the *McArthur* case, *supra*. What the Court said in that case, in rejecting the contention, is also applicable and decisive here:

"It is well settled that legislative bodies have no right to delegate the lawmaking power to commissions and boards established by the legislature, but it is equally well settled that the legislature may delegate the power to determine facts upon which the law makes or intends to make its own action depend and that general provi-

sions may be set forth with power given to those who are to act under such general provisions to complete the details. See, among other cases, *Fort Smith* v. *Roberts,* 177 Ark. 821, 9 S. W. 2d 75; *Fulkerson* v. *Refunding Board of Arkansas,* 201 Ark. 957, 147 S. W. 2d 980; *Currin* v. *Wallace,* 306 U. S. 1, 59 S. Ct. 379, 83 L. Ed. 441.'' A careful examination of the authority granted the Commission by Act 38 reveals that it is empowered to perform only such ministerial acts as are required to effectuate the overall purpose of the legislature. It would be absurd to say that the Constitution requires the legislative body to perform in detail every ministerial act necessary to the functioning of every commission it creates.

Finally, appellant contends that the charge for certificates of title is unequal and discriminatory in violation of the Federal and State Constitutions. That part of the State Constitution referred to is Article 16 § 5 which reads in part:

''All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State.'' Appellant's principal contention in this connection appears to be based on the assumption that the charge is a *tax* instead of a *fee.* In our opinion the assumption is erroneous and therefore his contention is without merit.

In two early decisions this Court had occasion to consider and settle this same question. In *Lee County* v. *Abrahams,* 34 Ark. 166, this Court held that a levy of 50 cents ''on each original writ and execution issued out of any of the courts of the state. . . .'' was not a tax within the meaning of the Constitution which requires all property tax to be levied *ad valorem.* Likewise, in the case of *Murphy* v. *The State,* 38 Ark. 514, it was held that a tax of $3.00 imposed on each criminal conviction was not a tax within the meaning of the Constitution. In both cases the Court said the levy was a *fee* to the public

and not a *tax*. For other decisions to the same effect see: *Texas Co.* v. *Brown,* 258 U. S. 466, 42 Sup. Ct. 375, 66 L. Ed. 721 and *Patton* v. *Brady, Executrix,* 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713. In support of appellant's contention that the charge of a $1.00 fee is in violation of Article 16, § 5 he relies on *Featherstone* v. *Norman,* 170 Ga. 370, 153 S. E. 58; *Hager* v. *Walker,* 128 Ky. 1, 107 S. W. 254; and *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892. We have carefully examined these decisions and find they are not in point or decisive of the question here presented.

We see no merit in appellant's further arguments to the effect that the charge of $1.00 is shown to be a tax because it is not optional but forced, because it is not intended to reimburse the State for services rendered. Conceding, without holding, the above named assertions are indicative that the charge is a tax, we do not think the assertions are true in this case. Certainly it cannot be said that everyone is forced to own a motor vehicle. The legislature found and common sense indicates that the Revenue Department does render a valuable service, that it needs the housing facility, and the State must be paid for that service. Also, appellant is apparently overlooking the fact that Act 38 does not create the $1.00 charge in question, and likewise the fact that the Act which did create the charge is not under attack in this litigation.

From all the above it is our opinion that said Act 38 is constitutional and that the trial court was, therefore, correct in sustaining the demurrer to appellant's complaint. Affirmed.