Jim MURPHY *v.* Wooten EPES, Executive Director of
Arkansas Housing Development Agency,
Mort HARDWICKE, Charles M. STOUT,
James BRANYAN, Troy BURRIS, Fred DACUS,
Margaret DAVENPORT, Tommy EDWARDS,
Mahlon A. MARTIN, Bill MATHIS, Betty WALKER,
George H. WRIGHT, Jr., Members of Board of Directors
of Arkansas Housing Development Agency, and
PEOPLES BANK AND TRUST COMPANY

84-196                                              678 S.W.2d 352

Supreme Court of Arkansas
Opinion delivered October 29, 1984

518

*Luther Hardin,* for appellant.

*Steve Clark,* Att'y Gen., by: *George E. Campbell,* Asst. Att'y Gen.; and *Rose Law Firm, A Professional Association,* by: *David L. Williams,* for appellees.

JAMES H. MCKENZIE, Special Justice. This is an illegal exaction suit filed pursuant to Article 16, Section 13 of the Arkansas Constitution and the Declaratory Judgment Act, Ark. Stat. Ann. § 34-2501 et. seq. (Repl. 1962). Jim Murphy, the plaintiff and appellant, is a citizen and taxpayer of Pope County, Arkansas. In this action, he represents all taxpayers within the state who might be potentially affected by the alleged illegal exactions. By his complaint in Pope County Chancery Court, the plaintiff alleged that the Arkansas Housing Development Agency should be enjoined from issuing Single Family Mortgage Bonds and Multi-Family Mortgage Bonds pursuant to Arkansas Acts 1977, No. 427 ("Act 427"). The Chancellor, in a well-considered memorandum opinion, held that the Single Family Bonds and the Multi-Family Bonds did not violate the Arkansas Constitution and were for a valid public purpose. He ordered the plaintiff's complaint dismissed. It is from this order of dismissal that the appellant appeals.

The Arkansas Housing Development Agency ("AHDA")

was created by the Arkansas General Assembly by Act 427. The portions of the Act material to this litigation are as follows: Sections 2.00 through 2.02 are recitations as to the need for the AHDA and the public purposes it is to serve, i.e., basically the need for housing for the people with low and moderate incomes. Sections 4.00 through 4.08 establish a public body corporate and politic with corporation succession to be known as the AHDA with a board of directors consisting of the Director of the Department of Finance and Administration and six members appointed by the Governor. Sections 5.00 through 5.23 state the powers of the Agency to include the power to borrow money and to issue bonds. Sections 7.00 through 7.15 authorize the Agency to make loans to mortgage lenders under rules adopted by the Agency, and Sections 8.00 through 8.13 authorize the Agency to purchase and participate in mortgages made to eligible persons or families within the State of Arkansas. Sections 9.00 through 9.03 empower the Agency to issue revenue bonds from time to time and in amounts to be determined by the Agency. The bonds shall be authorized by resolution of the Agency to be made in such denominations, to mature at such time and to bear interest at such rate as the Agency shall determine not to exceed 10 percent per annum. The bonds shall be executed by the signature of the Chairman of the Agency and the Director of the Agency. The Agency shall adopt a seal, and each bond shall be impressed with the seal of the Agency. Section 10.00 requires it be plainly stated on the face of each bond that it is issued under the provisions of Act 427 and that the bonds shall be obligations only of the Agency and that in no event shall they constitute an indebtedness for which the faith and credit of the State of Arkansas or any of its revenues are pledged. Section 10.01 provides that the principal of, interest on and the trustee's paying agent's fees in connection with the bond shall be secured by a lien and pledge of the loans made or mortgages purchased from the bond proceeds and the collateral security received by the Agency. Section 12.00 says that the bonds shall be exempt from all state, county and municipal taxes, except property taxes. Section 16.00 states that all revenues received by the Agency, except revenues derived from appropriation, are specifically declared to be cash funds restricted to be used solely as provided

in Act 427. These revenues shall not be deposited into the State Treasury but deposited in an account for the Agency.

The Board of Directors of the AHDA on June 14, 1984, adopted a series of resolutions which authorized the issuance by the Agency of $150,000,000 of single family residential mortgage revenue bonds (hereinafter referred to as "Single Family Bonds") and $30,078,090 of multi-family housing revenue bonds (hereinafter referred to as "Multi-Family Bonds"). The proceeds from the sale of the Single Family Bonds will be used by the AHDA to purchase mortgages secured by single family dwellings of families with low and moderate income as those terms are defined by the Agency. The proceeds from the sale of the Multi-Family Bonds will be used to provide funding for the rehabilitation and construction for multi-family housing projects in the State of Arkansas. These are revenue bonds to be repaid from the mortgage payments made by the owners of the single family and multi-family residences. The interest on the bonds will be exempt from federal income taxation if certain criteria are met and the bonds are issued prior to January 1, 1985. The appellant contends that the bond issues are illegal in that they violate Article 16, Section 1 and Amendment 20 of the Arkansas Constitution and that they are not for a valid public purpose.

It is the opinion of this court that for the proposed revenue bonds to be valid, they must pass two tests: 1) Not to be in violation of the Arkansas Constitution; and 2) Be for a public purpose. We have concluded that these particular bonds meet both of these tests for the reasons explained below.

1. *Constitutional.*

First, we point out that this case is factually distinguishable from *Purvis* v. *City of Little Rock*, 282 Ark. 102, 667 S.W.2d 936 (1984), where the court was considering bonds issued by the City of Little Rock to be paid by revenues generated under a lease to La Quinta of a motel on property owned by the City. The *Purvis* v. *City of Little Rock, supra,* bonds were issued pursuant to Arkansas Constitution

Amendment 49, Act 9 of 1960 and Act 380 of 1971. In the case at bar, the bonds are authorized and issued by the AHDA pursuant to Act 427 and are not issued by the State of Arkansas or even in the name of the State of Arkansas. The AHDA is, by Section 4.00 of Act 427, a public body corporate and politic with corporation succession. The bonds here in question are obligations only of the AHDA and so state on their face. They do not constitute an indebtedness of the State of Arkansas under Section 10.00 of Act 427. Each bond bears the seal of the AHDA and not the State of Arkansas.

The Arkansas Constitution is not a grant of enumerated powers to the legislature but rather the legislature may rightfully excercise the power of the people subject only to the restrictions of the state or federal constitutions. *Wells* v. *Purcell,* 267 Ark. 456, 592 S.W.2d 100 (1979). In the context of this case, the Arkansas Legislature could rightfully enact Act 427 to allow AHDA to issue the proposed revenue bonds without an election by the people of this state unless prohibited by the Constitution of the United States and/or Arkansas. It is not contended by either party that any provision of the United States Constitution is applicable, but appellant does argue that Article 16, Section 1 and Amendment 20 of the Arkansas Constitution prohibit the proposed bond issues. We do not agree. The concurring opinion of Justice Dudley in *Purvis* v. *City of Little Rock, supra,* is a recent statement of the reason why:

> "Our cases constitute a well developed body of precedent, now stretching over half a century, by which this court has consistently interpreted the constitution to authorize governments to incur long term debt, without elective approval, in order to make authorized improvement for public purposes when the debt is to be paid out of revenues."

282 Ark. at 126, 667 S.W.2d at 948. See also *Miles* v. *Gordon,* 234 Ark. 525, 353 S.W.2d 157, *Davis* v. *Phipps,* 191 Ark. 298, 85 S.W.2d 1020 (1935), *Jacobs* v. *Sharp,* 211 Ark. 865, 202 S.W.2d 964 (1947) and *McArthur* v. *Smallwood,* 225 Ark. 328 281 S.W.2d 428 (1955).

In *Miles* v. *Gordon, supra,* suit was brought seeking an injunction to prohibit the issuance of certificates of indebtedness to finance construction of buildings at the state-supported university and colleges under Act 65 of 1961. The certificates were to be repaid with interest received from the investment income received by the State Board of Finance on state funds. This interest went into a special fund and was pledged to the payment of the certificates of indebtedness. This was the sole source from which payment could be made. This court held that Act 65 and the certificates of indebtedness were not in violation of Article 16, Section 1 of the Constitution and said:

> "Article 16, Section 1, of the Arkansas Constitution provides, *inter alia,* that the state shall not lend its credit for any purpose whatever. The answer to that argument is simply that Act 65 does not call for the State to lend its credit. The obligation arising under Act 65 is solely that of the Reserve Fund Commission. In *Brown* v. *Arkansas Centennial Commission,* 194 Ark. 479, 107 S.W.2d 537, the same contention was made in an attack upon Act 180 of 1935. This Court, after citing language of the Act to the effect that no bond, note, or other evidence of indebtedness issued under the Act or created by the Commission should be held or construed as an obligation of the State of Arkansas, stated:
>
>> 'It is plainly manifest from this language that the bonds to be issued are not obligations of the state, but "shall be solely and exclusively the obligations of the Commission in its corporate and representative capacity." '
>
> This language is too plain to be misunderstood and is not open to construction. So the state is not lending its credit and it is not issuing any interest bearing treasury warrants or scrip, and the provisions of said section of the Constitution are not invaded."

The *Miles* v. *Gordon* decision also concluded that Act 65 of 1961 did not violate Amendment 20.

In the case at bar, the AHDA is issuing bonds solely and exclusively as the Agency's obligations and Act 427 specifically provides that the bonds shall be obligations only of the Agency. Those bonds are secured by a lien and pledge of the loans made or mortgages purchased from the proceeds and the collateral security received by the Agency. Section 10.01. The purchaser has no legal recourse against the State of Arkansas in the event of default of the bonds. Therefore, we conclude that on this set of facts, the state has not lent its credit. Consequently, Act 427 and the proposed bonds to be issued thereunder are not in violation of Article 16, Section 1.

Amendment 20 of the Constitution, as pertinent to this case, provides:

". . . the State of Arkansas shall issue no bonds or other evidence of indebtedness pledging the faith and credit of the State or any of its revenues for any purpose whatsoever, except by and with the consent of the majority of the qualified electors of the State voting on the question at a general election or at a special election called for that purpose."

Section 10.00 of Act 427 specifically says:

"It shall be plainly stated on the face of each bond that it has been issued under the provisions of this Act, that the bonds shall be obligations only of the Agency, and that in no event shall they constitute an indebtedness for which the faith and credit of the State of Arkansas or any of its revenues are pledged."

In *Purvis* v. *Hubbell,* 273 Ark. 330, 620 S.W.2d 282 (1981), this court reviewed the holdings of *McArthur* v. *Smallwood, supra, Miles* v. *Gordon, supra,* and *Holmes* v. *Cheney,* 234 Ark. 503, 352 S.W.2d 943 (1962). It was concluded that bonds which are clearly not general obligation bonds of the city or state but are revenue bonds payable as authorized by the legislature from special funds not available for general purposes are not prohibited by the Arkansas Constitution, and such revenue bonds do not have to be approved by an election.

The bonds issued under Act 427 do not pledge the full faith and credit of the state nor the state's revenues at all. The only revenues that are to be used to repay the bonds are the collection of the principal and interest from the loans made or mortgages purchased with the bond proceeds. These revenues received by the Agency are not to be deposited into the State Treasury but rather are restricted in their use to be used by the Agency solely for the purposes of carrying out the provisions of Act 427. Section 16.00. There is no public money, either in the form of appropriations, rentals, license fees or the like, being pledged to support the repayment of these bonds. This is even a clearer case of there being no state revenues involved than were the facts of *Purvis* v. *Hubbell, supra, MrArthur* v. *Smallwood, supra, Holmes* v. *Cheney, supra,* and *Miles* v. *Gordon, supra.*

Act 427 is not in violation of Article 16, Section 1 or Amendment 20 of the Arkansas Constitution, and the revenue bonds to be issued by the AHDA are not subject to the requirement of an election. The remaining question is whether these bonds are for a public purpose.

2. *Public Purpose.*

In reviewing whether this legislation serves a public purpose, we do so in accordance with *Kerr* v. *East Central Arkansas Housing Authority,* 208 Ark. 625, 187 S.W.2d 189 (1945):

> "Public policy is declared by the General Assembly; not by courts. Unless there is something in the Constitution restraining the Legislature from saying that a designated course of conduct or a policy is for the public welfare, or unless the thing authorized is so demonstrably wrong that reasonable people would not believe that such was the legislative intent; the Act must prevail."

The concurring opinion of Justice Dudley in *Purvis* v. *City of Little Rock, supra,* can be applied in determining whether or not Act 427 is for a public purpose. That opinion, when applied to Act 427, says that the determi-

nation of whether legislation fulfills a public purpose is a legislative decision and a court will reverse that decision only if the legislature acted arbitrarily, unreasonably or capriciously. The court should not substitute its own judgment for that of the legislature. As the Chancellor stated in his memorandum opinion, the legislature studied the need for the creation of the Arkansas Housing Development Agency and included in Act 427 particular findings of fact as to why it felt there was a public purpose. It is to be noted that Act 427 is the enabling legislation for the issuance of the Single Family Bonds and the Multi-Family Bonds. However, both series of bonds are issued under the AHDA's bond authorization resolutions which set forth the terms of the bonds and how the bond proceeds will be used within the confines of Act 427. So, when this court examines the public policy of the bonds, we are not only reviewing the legislation but also the administration of this Act by the AHDA.

The evidence in the trial court concerning public purpose was either stipulated or uncontradicted.

As to the bond issue for single family dwellings, the proof shows that, at least in 1974, 70 percent of the state's population was unable to afford a home through conventional private financing. The loan supported by the Single Family Bonds will be available only to families with annual incomes of $40,000 or less plus an additional $2,000 for each dependent. The interest rate for loans made under the bond issue is anticipated to be 11.5 percent, and the conventional loan interest rate is between 14 percent and 14.25 percent. Consequently, 20,000 potential home buyers would be eliminated from the housing market if the proposed bond issue is not implemented. The minimum qualifying income for a conventional loan of $37,000 is $21,469.68 per year. The qualifying annual income under the AHDA Single Family Bonds is $18,070.32. The median income in Arkansas is $19,737.00. Therefore, the proposed bond issue will allow families with less than the median income to purchase a home and save approximately $28,500 in interest over the life of a 30-year mortgage on a $37,000 loan. The testimony is that the AHDA bonds bring low and moderate income buyers into the housing market making it possible for them

to obtain home loans where otherwise not available. There is a public purpose served by aiding the low and middle income residents of Arkansas to secure adequate housing which would otherwise be beyond their reach.

As to the Multi-Family Bond issue, 51 percent or more of the occupants must be families whose incomes do not exceed 1.5 times the median income of the State of Arkansas or the county in which the project is located, whichever is greater. Twenty percent of the occupants must have incomes of less than 80 percent of the median income. This is necessary because Act 427 does say that the bonds issued by the AHDA are to be tax exempt. To qualify as tax exempt, the Multi-Family Bond proceeds must be used to provide projects for residential rental property where 20 percent or more (except in "target areas", where it is 15 percent) are to be occupied by individuals of low or moderate income, meaning the percentage of median gross income shall be 80 percent. 26 *USCA* Section 103. These requirements are to assure an "economic mix" of tenants. The testimony is that this will result in greater overall stability of the multi-family project, because there will be a mixture of economic households rather than being solely low income persons. This is to avoid the adverse consequences of isolating low income households. Wooten Epes, Executive Director of AHDA, testified that the requirement of 20 percent of the units in the project be reserved for persons whose income is not more than 80 percent of the median income is a form of rent subsidy for the poor. The developer will have to charge higher rent for the remainder of the units to generate enough cash flow to repay the indebtedness secured by the mortgage on the project that is pledged to the AHDA under the bond issue.

The concept of an "economic mix" in housing has been recognized in other jurisdictions as being for a public purpose by both courts and legislatures. The dominant intention of Act 427 is to provide adequate housing to people of low and moderate income. The concentration of low income families even in standard structures has been recognized as not eradicating undesirable housing or social conditions for the poor. However, integrating the housing

of persons with varied economic means in the same rental projects and neighborhoods is conducive to the permanent elimination of substandard living conditions. Massachusetts Acts 1966, Chapter 708, Section 2; *Tedford v. Massachusetts Housing Finance Agency*, 459 N.E.2d 780 (Mass. 1984). This concept encourages the investment of private capital and stimulates construction of residential housing for the low and moderate income people by stabilizing the longevity of the project with an economic mix of residents. Virginia Housing Development Authority Act, Code Section 36-55.25; *Infants v. Virginia Housing Development Authority*, 272 S.E.2d 649 (Va., 1980). Act 427 states in Section 2.00 the legislature's concern over depreciated property values, impaired economic values of large areas and reduced capacity to pay taxes where there exists a shortage of safe, adequate and sanitary residential housing in the state. We are persuaded by the reasoning of *Infants v. Virginia Housing Development Authority, supra,* that promotion of economic and social integration in low and moderate income housing will serve to reduce unsatisfactory social conditions in the rural and urban areas of this state. This intermingling of households of different economic strata reflects a legitimate public purpose of avoiding ethnic, economic and racial isolation. *California Housing Finance Agency v. Elliot,* 551 P.2d 1193 (Cal., 1976).

It is not overlooked that persons with unrestricted incomes will have access to possibly 49 percent of the multi-family housing allowed to be financed with Multi-Family Bonds. It is our conclusion that this is incidental and subordinate to the primary purpose of providing satisfactory housing for the poor and moderate income citizens of this state. In *Grubbs v. Iowa Housing Finance Authority,* 255 N.W.2d 89 (Ia., 1977), the Supreme Court of Iowa held a housing finance plan that required 30 percent of all housing units be for the elderly, handicapped and very low income to be for a public purpose and said:

"This built-in flexibility is reasonably designed by the legislature to promote the goal of adequate housing for the designated beneficiaries of the enactment, and does

not convert a public policy into an unconstitutional private purpose."

255 N.W.2d at 94.

*Hogue* v. *The Housing Authority of North Little Rock,* 201 Ark. 263, 144 S.W.2d 49 (1940), held that housing for the low and moderate income is a valid public purpose. The Legislature has stated in Sections 2.00 through 2.02 of Act 427 that the statute is for a public purpose. The uncontradicted and stipulated proof in this case is that the statute and its administration by the AHDA with the proposed bond issue are for a public purpose. The Chancellor found the bonds to be for a public purpose. This court's standard for reviewing a Chancellor's finding of fact is that his decision will be affirmed unless clearly against the preponderance of the evidence. For the reasons set forth above, we are unable to say that the Chancellor erred in finding the issuance of the Single Family Bonds and the Multi-Family Bonds is for a valid public purpose.

We affirm the Chancellor's dismissal of the appellant's complaint.

HUBBELL, C.J., and HOLLINGSWORTH, J., not participating.

PURTLE, J., concurs. HICKMAN, J. dissents.

JOHN I. PURTLE, Justice, concurring. I agree with the result of the majority opinion for the reasons and citations contained in the first point of the opinion. I disgree with some statements under the first point and with the second point of the opinion.

First, I disagree with the statement that the Arkansas Constitution is not a grant of enumerated powers because it obviously is such a grant. The preamble begins with the words, "We, the people of the State of Arkansas . . ." Section 1 of Article 2 reads as follows:

All political power is inherent in the people and

government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same in such manner as they may think proper.

Section 2 of Article 2 states that the government derives its powers from the consent of the people. Article 4 establishes the three branches of government. Articles 5, 6 and 7 define the powers granted to each of the three departments. If the grant of powers were not limiting there would be no reason why the General Assembly could not enlarge or reduce the powers of the Executive or Judicial departments. Furthermore, there would be no need to define the duties of any branch of the government if the Constitution were not a grant of powers by the people. There are many reasons for considering the Constitution to be a grant of powers. For example, the General Assembly may not establish laws allowing interest rates above certain limits; the Governor must keep the General Assembly informed of the conditions and government of the state; and no Judge or Justice may preside in a cause in which he has a personal interest or is related to a party, by affinity or consanguinity, within such degree as is prescribed by law. Indeed the very question before us now is whether the General Assembly has been given authority to provide for the issuance of the bonds here in question.

I also disagree with that portion of the majority opinion which states that we have held that bonds which are not general obligation bonds and are not prohibited by the Constitution do not have to be approved by the electorate. Such bonds also must not lend the credit of the state or municipal entity to secure the obligation. In *Purvis* v. *City of Little Rock*, 282 Ark. 102, 667 S.W.2d 936 (1984) [*Purvis II*] we held that the city of Little Rock had in fact lent its credit to La Quinta. The bonds were boldly entitled "limited obligation bonds of the city of Little Rock." The bonds in the case before us do not purport to be obligations of the State of Arkansas. The majority opinion clearly expresses the reasons why these bonds are not obligations of the state and why they do not pledge the faith and credit of the state in any manner. There is absolutely no recourse against the state

in the event the revenues do not meet the obligations imposed by the bonds.

I do not agree with the majority where it quotes from a concurring opinion in *Purvis II* to the effect that this court has consistently held that it was unnecessary to hold an election on bond issues which authorized governments to incur long term debts to make authorized improvements for public purposes if the bonds were to be paid from revenue generated by the project. The statement leaves out essential ingredients. The public purposes for which revenue bonds are issued cannot be debts incurred by the municipalities and must be for a purely public purpose as defined by Article 16, Section 1, as amended. The reason the concurring opinion was written on this point was that a majority of the court did not agree that it accurately stated the law. What we stated in *Purvis II* was that "municipalities may issue pure revenue bonds for purely *essential public purposes* without holding an election." [Emphasis added.] The last quoted statement is not the same as the part of the concurring opinion which states that the Constitution "authorize[s] governments to incur long term debt, without elective approval, in order to make authorized improvements for *public purposes* when the debt is to be paid out of revenues." [Emphasis added.]

It seems clear to me that what we intended in *Purvis II* was to prohibit municipalities from issuing bonds pursuant to Amendment 49 without an election and further to make it clear that municipalities could authorize revenue bonds, which are not obligations of the municipalities, for those public purposes enumerated in Article 16 as amended. (Amendment 20 holds the state to the same restrictions as Article 16, as amended, does the municipalities.)

Having decided that the State of Arkansas is not involved in this bond issue it becomes unnecessary to decide whether they were issued for a public purpose. If it were necessary to decide this issue I would hold that they were not issued for a public purpose as defined in *Purvis II*.

DARRELL HICKMAN, Justice, dissenting. I expressed my

views in *Purvis* v. *City of Little Rock,* 282 Ark. 102 667 S.W.2d 936 (1984), and I will adhere to them. The constitution clearly sets out which bonds the state or any government entity should be involved in. The bonds in this case, issued by a state agency, are simply a way to directly aid a private developer who builds and sells houses. While the bonds declare that the state will not be bound, this state entity was created expressly to issue bonds. The state is involved because it must declare them to be bonds issued for a public purpose. Otherwise, they would not be legitimate tax free bonds, which is the primary purpose of their existence. The state is not supposed to lend its credit or good name to such private ventures. Ark. Const. Amend. XVI (1874). See also Ark. Const. Art. XII, §§ 6 and 7. However, that is what is happening here: the state's good name is being used to promote these bonds.

These bonds are not issued to help "poor" people, which is how they are being justified. The record bears out that moderate and high income people will be the greatest beneficiaries of the bonds. There will not be any destitute people living in these houses. Arkansas does not need to be in the business of aiding private developers in building houses that are no different than others on the market. This case is not actually different in principle from *Purvis* v. *City of Little Rock, supra,* where we struck down a scheme to aid a private motel. If anything, the public purpose argument is less forceful here. The only purpose here is to aid bond dealers, developers, and investors by way of tax free bonds.

I respectfully dissent.