The Honorable William H. Townsend State Representative 1304 Wright Avenue Little Rock, Arkansas 72206
Dear Representative Townsend:
This is in response to your request for an opinion on the following question:
 Whether a state constitutional, statutory or other prohibition exists that would preclude the City of Little Rock from including a housing acquisition and rehabilitation program, which provides, among other things, grants, loans and other assistance to low and moderate income individuals as one of the capital projects to be funded from the one-half cent sales tax to be voted on by the citizens of Little Rock on October 8, 1991?
It is my opinion that the answer to your question is "yes." In addition to the fact that such an action is in all likelihood not authorized by statute, it is my opinion that Article 12, § 5 of the Arkansas Constitution would prohibit it. It should be noted, additionally, that the Little Rock City Attorney has reached a similar conclusion, and advised the city accordingly. See Legal Opinion No. 91-020 of the Little Rock City Attorney.
The October 8, 1991 election will be held for the purpose of voting of the issuance of bonds to fund various capitol improvements in the City of Little Rock. Each of the projects is to be funded by bonds issued pursuant to Amendment 62 to the Arkansas Constitution, the repayment of which is to be funded by the levy of a sales and use tax as authorized by A.C.A. §§26-75-201 et seq., 26-75-301 et seq., and/or 14-164-301et seq, (Cum. Supp. 1991). These statutory subchapters authorize the issuance of bonds and the pledging of sales tax monies in repayment thereof, for the the constructing, acquiring or equipping of "capital improvements of a public nature." Both A.C.A. §§ 26-75-203 (3) and 26-75-303(3) define "capital improvements of a public nature" as including "public housing facilities." Section 14-164-303(a)(2)(C) defines the phrase as including "residential housing for low and moderate income, elderly or handicapped persons, and families." It is unlikely, in my opinion, that these phrases were intended to encompass loans and grants to private individuals for the acquisition and rehabilitation of private housing. The statutes appear to contemplate, rather, the constructing, acquiring or equipping ofpublicly owned housing.
As such, the City of Little Rock is without statutory authorization to implement a program such as the one you suggest. Cities are creatures of the legislature, and as such, have only such power as is bestowed upon them by the legislature or by the Constitution. Jones v. American Home Life Ins. Co.,293 Ark. 330, 738 S.W.2d 387 (1987). Although cities of the first class have been given broad authority over "municipal affairs" (see A.C.A. § 14-43-602), their authority over the imposition of sales taxes is limited to that authority delegated by statute. A.C.A. §14-43-606.
There is another more compelling reason, however, why the city cannot implement a program of grants and loans for housing to low or moderate income individuals. Article 12, § 5 of the Arkansas Constitution provides as follows:
 No county, city, town, or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
See also Ark. Const. art. 16, § 1.
It is my opinion that the granting or loaning of money by the city, through the use of city tax dollars, to low or moderate income individuals for housing purposes would constitute the appropriating of money for, or the lending of credit to, these individuals. As such, it cannot be accomplished constitutionally. This is true even if the action contemplated accomplishes a "public purpose." In Murphy v. Epes, 283 Ark. 517,678 S.W.2d 352 (1984), (repudiated on other grounds in City of Hot Springsv. Creviston, 288 Ark. 286, 705 S.W.2d 415 (1986)), the Arkansas Supreme Court upheld the issuance of "AHDA" (Arkansas Housing Development Authority) bonds which were issued to ultimately provide mortgages for low and moderate income individuals. The court stated that:
 The testimony is that the AHDA bonds bring low and moderate income buyers into the housing market making it possible for them to obtain home loans where otherwise not available. There is a public purpose served by aiding the low and middle income residents of Arkansas to secure adequate housing which would otherwise be beyond their reach.
283 Ark. at 526-527. See also generally Turner v.Woodruff, 286 Ark. 66, 689 S.W.2d 527 (1985), Rowe v. HousingAuthority of the City of Little Rock, 220 Ark. 698,249 S.W.2d 551 (1952), and Hogue v. The Housing Authority of North LittleRock, 201 Ark. 263, 144 S.W.2d 49 (1940).
In Murphy, however, the bonds were issued pursuant to specific statutory authority, were not the obligation of the state, and were not backed by taxes. They were "revenue bonds."
We are thus presented with the situation where the contemplated use of public money would appear to be for a "public purpose" within the meaning of Amendment 62, but would nonetheless be in violation of Article 12 § 5's prohibition against lending credit or appropriating money to individuals.[1] If these loans and grants were deemed to be for a "public purpose" as is indicated in Murphy, there may be no prohibition against the city's issuance of revenue bonds for such a purpose, assuming statutory authority was present; but the pledge of city monies for this purpose, specifically sales tax dollars, in my opinion is violative of Arkansas Constitution art. 12, § 5.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] There is no indication that the prohibition under Article 12, § 5 against lending credit, unlike Article 16, § 1, is in any way superseded by Amendment 62 as to tax-backed bonds issued for a "public purpose."