20

John F. WELLS et al *v.*
Bill CLINTON, Governor et al

83-259                                    666 S.W.2d 684

Supreme Court of Arkansas
Opinion delivered March 12, 1984
[Rehearing denied April 30, 1984.]

*James F. Lane,* for appellants.

*Steve Clark,* Atty. Gen., by: *R. B. Friedlander* and *Randel Miller,* for appellees.

GEORGE ROSE SMITH, Justice. This is a taxpayers' suit against the Governor and other State officers for a declaratory judgment declaring the Public Facilities Finance Act of

1983 to be unconstitutional as an unlawful delegation of legislative authority. Act 458 of 1983; Ark. Stat. Ann., Title 13, Ch. 26 (Supp. 1983). Essentially the plaintiffs contend that the legislature cannot authorize the construction of any public building without specifically describing the building and specifying exactly where it is to be built. We consider that point of view to be too narrow a restriction upon the General Assembly's discretion and hold the statute to be valid.

Preliminarily, common sense and ordinary experience tell us that the legislature cannot suddenly command the construction of a particular building without much study and planning on someone's part. The need of a given state agency for a new building must first be determined. Someone must select, and underwrite the cost of, architects, who in turn must consult with the agency and eventually prepare plans to meet its requirements. Estimates of construction costs must be made, limited by the availability of funds for the project. After months or years of preparation, involving substantial expense, a site is finally selected, contracts are let, and construction begins.

The members of the General Assembly are aware of all these facts and have adopted general laws to meet the situation. In 1975 the legislature created a central agency, the State Building Services, to be responsible for the state's various capital improvements. Act 716 of 1975; Ark. Stat. Ann., Title 5, Ch. 10 (Repl. 1976). The eleven-member Building Services Council is charged with the duty of obtaining information from the various state agencies about their projected needs for space and facilities and of attending to all the administrative details that we have mentioned in broad outline. Section 5-1020. The Council is directed to make monthly reports to the Legislative Council and to the Governor. Section 5-1020 (d) (xiii).

It was with the foregoing background that the General Assembly adopted Act 458 of 1983, now challenged by the appellant taxpayers. The statute authorizes the Building Services to expend not more than $25,000,000 for the construction and maintenance of capital improvements for

the Department of Correction's prison agriculture and industry programs and for the state-supported institutions of higher education. Section 13-2604. The General Assembly finds that the proposed construction is essential to the well-being of the State, Section 13-2614, and directs the Council to employ architects and let the necessary contracts. Section 13-2616. Legislative control is retained by requiring Building Services to prepare a plan for all the proposed construction work and keep the Legislative Council, the Governor, and the Chief Fiscal Officer informed of progress. Section 13-2618.

We have no hesitancy in holding that no unlawful delegation of legislative power has been shown. The presumption of constitutionality given to all statutes requires us to assume that the legislature determined that the proposed construction is needed and can be accomplished with the funds provided. The appellants argue that the members of the General Assembly must themselves decide and specify in the statute "what will be built, where it will be built and what it will cost." One might as well, we think, insist that in a parallel situation the members of Congress must describe and specify, for example, the thousands of new postoffices that are built every year. The administrative determination of such facts may properly be delegated to a subordinate agency. *Merritt* v. *No Fence Dist. No. 2,* 205 Ark. 1129, 172 S.W.2d 684 (1943).

The appellants' second and third points may be disposed of quickly. Act 458 was not improperly passed merely because the Senate concurred by voice vote in the House's amendments, for the ayes and nays need not be recorded when one branch concurs in amendments by the other branch. *Ewing v. McGehee,* 169 Ark. 448, 275 S.W. 766 (1925). Nor was the companion appropriation act, Act 895 of 1983, impermissibly vague in appropriating funds for "Major Maintenance," without further definition. Almost every appropriation act for a state agency's annual budget includes an item for maintenance, which obviously cannot be specified in detail in advance. Finally, the appellants invite the court to state that it will prospectively reconsider the state's use of certificates of indebtedness to finance state

projects, but since the issue is not presented by this case there is no occasion for us to speculate about what might be done if such a question arises.

Affirmed.

HICKMAN and PURTLE, JJ., concur.

DARRELL HICKMAN, Justice, concurring. The appellants do not raise the most obvious question. That is, can the legislature, through its own bonding agency, the Arkansas State Building Services, without voter approval, issue twenty-five million dollars in bonds and place the state in debt by pledging future state revenues? Avoiding the provisions of Amendment 20 to the Arkansas Constitution has been a favorite practice of the legislature and executive branches of the government, and we have eagerly approved the practice. Amendment 20 reads:

> Except for the purpose of refunding the existing outstanding indebtedness of the State and for assuming and refunding valid outstanding road improvement district bonds, the State of Arkansas shall issue no bonds or other evidence of indebtedness pledging the faith and credit of the State *or any of its revenues for any purpose whatsoever,* except by and with the consent of the majority of the qualified electors of the State voting on the question at a general election or at a special election called for that purpose. (Italics supplied.)

That language is fairly plain. Arkansas may not make any debts through bonds without voter approval (the so-called certificates of indebtedness in this case are nothing but "revenue" bonds). However, Amendment 20 has regularly been avoided with our approval. *Holmes* v. *Cheney,* 234 Ark. 503, 352 S.W.2d 943 (1962); *Miles* v. *Gordon,* 234 Ark. 525, 353 S.W.2d 157 (1962); *McArthur* v. *Smallwood,* 225 Ark. 328, 281 S.W.2d 428 (1955); *State, ex rel Attorney General* v. *State Board of Education,* 195 Ark. 222, 112 S.W.2d 18 (1937).

In *Purvis* v. *Hubbell,* 273 Ark. 330, 620 S.W.2d 282 (1982), the majority issued this warning:

After carefully considering our previous decisions, it appears there has been a gradual expansion of the concept of revenue producing bonds, which require no popular approval, as was authorized for instance in *Snodgrass* v. *Pocahontas,* 189 Ark. 819, 75 S.W.2d 223 (1934). However, a change should not be made retroactively, after public agencies and investors have relied on our decisions; but in other instances we have given notice that an interpretation of the Constitution may or will be changed. *Clubb* v. *State,* 230 Ark. 688, 326 S.W.2d 816 (1959); *Hare* v. *General Contract Purchase Corp.,* 220 Ark. 601, 249 S.W.2d 973 (1952). Accordingly, we give notice of our intention to prospectively reconsider our cases at the next opportunity after the present opinion becomes final.

We will have to await another case to see if the majority seriously intends to limit what has become an arrogant disregard of the constitution. Until then, the legality of "certificates of indebtedness" remains questionable. Arkansas's reputation for fiscal integrity is only part truth. The other part is fiction and that part is growing.

PURTLE, J., joins in this concurrence.