Robert CORTEZ *v.* INDEPENDENCE COUNTY, et al.

85-125                                         698 S.W.2d 291

Supreme Court of Arkansas
Opinion delivered November 4, 1985

. *William C. Adair*, for appellant.

*Rose Law Firm*, A Professional Association, by: *M. Jane Dickey, Les R. Baledge*, and *David L. Williams*, for appellees.

DAVID NEWBERN, Justice. The appellant, Robert Cortez, as a taxpayer, sought to enjoin the Independence County, Arkansas, Public Health and Education Facilities Board from issuing educational facilities bonds to finance construction and physical improvements at Arkansas College in Batesville. The appellant also sought a declaratory judgment that the board's resolution, made pursuant to Ark. Stat. Ann. §§ 20-1701 through 20-1720 (Repl. 1962 and Supp. 1985), violated Ark. Const. art. 2, § 24; art. 12, §§ 4, 5; and art. 16, § 1, as well as the First Amendment to the U. S. Constitution.

The issues raised by the appellant are: (1) whether the bonds lend the credit of Independence County in violation of Ark. Const. art. 12, § 5 and art. 16, § 1; (2) whether the bonds have a valid public purpose as described in *Murphy* v. *Epes*, 283 Ark. 517, 678 S.W.2d 352 (1984); and (3) whether the bonds

constitute impermissible state aid to religion in view of Arkansas College's ties with the Presbyterian Church. We hold the chancellor was correct in ruling for the appellees on each issue, and thus we affirm.

### 1. Pledge of Credit

This point can be handled summarily by noting that the bonds state on their face that they do not pledge the faith and credit of the county. Indeed, that is a requirement of Ark. Stat. Ann. § 20-1710 (Supp. 1985) which is a part of the statutory scheme pursuant to which the bonds were issued.

These bonds are to be paid by revenue (student fees and tuition) generated by the college. While the Public Facilities Board is liable on the bonds, Independence County is not.

In two recent cases we have held that it is enough to assure compliance with Ark. Const. art. 16, § 1 that the bonds state they do not pledge the credit of the state or the political subdivision which created the agency issuing the bonds. *Turner* v. *Woodruff*, 286 Ark. 66, 689 S.W.2d 527 (1985); *Murphy* v. *Epes, supra.*

### 2. Public Purpose

In Ark. Stat. Ann. § 20-1702 (Supp. 1985) the General Assembly expressed its determination that adequate "educational facilities" are essential to the public welfare and that public financing is an essential alternative means of financing them. The definition of "educational facilities" is found in § 20-1703. The General Assembly, in 1981, twice amended § 20-1703, purporting in each instance to add a subsection "u." The first amendment, Section 2 of Act 528 of 1981, contained a long definition or description of facilities for post-secondary education. It divided them into sub-subsections entitled "Approved Private Institution" and "Approved Public Institution." The second amendment was Section 2 of Act 827 which is now codified as § 20-1703 (v). It provides:

> [(v)] (u) The term "educational facilities" means real, personal and mixed property of any and every kind intended for use by an educational institution in furtherance of its educational program, including, but not limited

to, dormitories, classrooms, laboratories, athletic fields, administrative buildings, utilities, equipment and other property for use therein or thereon.

We need not be concerned about which of these 1981 additions is the "real" subsection "u" or "v" or which of them should have been codified. The important point is that either of them would include Arkansas College and the project to be financed there. Nor is there any indication that by creating the second amendment the General Assembly intended to withdraw participation of private colleges. If Act 827 repealed Act 528 and was substituted for it, it was substituted in place of Act 528's references to both "Approved Private Institution" and "Approved Public Institution." If we were to hold that private institutions were thus eliminated from participation we would have to say public institutions were eliminated as well, and that was obviously not the legislative intent.

Further evidence of legislative approval of bonds for financing higher educational facilities is found in § 20-1704.1 which empowers public facilities boards to include "facilities for post-secondary education" in public facilities projects.

In addition we made it clear in *Turner* v. *Woodruff, supra*, that education, in general, is a legitimate public purpose.

### 3. Religious Establishment or Entanglement

Arkansas College is unquestionably related to the Presbyterian Church. It was founded by that denomination, and a majority of the members of its board are Presbyterians. There is a chapel on the campus where the minister, who is employed by the College, conducts weekly religious services. A three-hour course called "Introduction to the Bible" is required for graduation. It is otherwise a typical small liberal arts college. The three-hour Bible course constitutes only 2 percent of the 128 credits required for graduation.

The project to be financed by the bonds includes such items as renovating buildings, asphalting parking lots, and fencing. Perhaps the most questionable item from an "establishment" or "entanglement" perspective is that a building known as "Brown's Chapel" will have its parking lot resurfaced. It is a building which is devoted to many educational purposes, but it contains the room

with 80 seats in which weekly religious services are held. Testimony showed that weekly attendance usually amounts to six students. The building also has a 550-seat auditorium and houses other activities such as music instruction. The large auditorium is available for rental to the public for lectures, theatrical performances and other such activities.

Ark. Const. art. 2, § 24, says in part, ". . . no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other." Aid to Arkansas College gives no preference to the Presbyterian faith over any other. Any college sponsored by a church would be entitled to the same kind of bond issue if all statutory requirements were met.

A more serious question arises under the First Amendment to the U. S. Constitution and the U. S. Supreme Court decisions interpreting it. The appellant relies on *Lemon* v. *Kurtzman*, 403 U.S. 602 (1971), for his argument that issuance of the bonds will result in "excessive entanglement" of government and religion. That case involved direct subsidies paid by Rhode Island and Pennsylvania to secular schools. The Supreme Court particularly noted the danger in supporting institutions sponsored by churches in which impressionable elementary school students are taught "secular" subjects in an atmosphere pervaded by religion.

On the other hand, in *Hunt* v. *McNair*, 413 U.S. 734 (1973), the Supreme Court rejected a First Amendment challenge to South Carolina's legislation permitting assistance to higher education institutions in financing capital improvements. At issue in that case was financial assistance to a Baptist-sponsored college through the issuance of revenue bonds by the South Carolina Educational Facilities Authority. The South Carolina legislation, which was very similar to the Arkansas legislation discussed above, stated its purpose was to assist "institutions for higher education and the construction, financing and refinancing of projects." S. C. Code Ann. § 22-41.4 (Supp. 1971). *See* 413 U.S. at 736.

As the appellee points out, the most significant difference between the *Hunt* case and this one is that Baptist College at Charleston's student enrollment was 60 percent Baptist while the Presbyterian enrollment of Arkansas College is only 7.5 percent.

It is clear to us that the U. S. Supreme Court would not regard the statutes authorizing the bonds in question here as being violative of the First Amendment.

The Supreme Court's test is:

First, the statute must have a secular purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . , finally, the statute must not foster "an excessive government entanglement with religion."
[*Lemon* v. *Kurtzman, supra,* 403 U.S. at pp. 612-613; *Hunt* v. *McNair, supra,* 413 U.S. at p. 741.]

We do not ignore the argument that the tax savings on public revenue bonds frees money which might otherwise have to be spent on "secular" improvements for possibly "sacred" uses. Nor do we lightly put aside the argument that a building in which religious services are held will be enhanced by the project. However, we are convinced the U. S. Supreme Court cases require us to say these arguments are insignificant in view of the primarily secular purpose of the legislation and its effect here which is to foster liberal arts higher education rather than the establishment of any particular religion or of religion in general.

We have reviewed the Supreme Court's most recent cases in this area and find them to be irrelevant as they address situations far more akin to *Lemon* v. *Kurtzman, supra,* than to *Hunt* v. *McNair, supra,* and the case before us now. *See Aquilar* v. *Felton,* No. 84-237 decided July 1, 1985, and *School District of the City of Grand Rapids* v. *Ball,* No. 83-990, decided July 1, 1985.

Affirmed.

PURTLE, J., not participating.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. Independence County obtained a low-interest loan for Arkansas College, a private Presbyterian institution. Article 12, section 5 of the Arkansas Constitution provides:

No county, city, town or other municipal corporation shall

> become a stockholder in any company, association or corporation; *or obtain* or appropriate *money for*, or loan its credit to, any corporation, association, *institution* or individual. (Italics supplied.)

The first sentence of Amendment 13 to the Arkansas Constitution reads: "Neither the State nor any city, county, town or other municipality in this State, shall ever lend its credit for any purposes whatsoever . . . ." The majority has ignored the violation of these provisions by stating that the county has not pledged its faith and credit by issuing revenue bonds. That, however, is not the only prohibition of the constitution.[1]

Not all states have so easily bypassed their similar constitutional provisions. The Idaho Constitution provides:

> The credit of the state shall not in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation; nor shall the state directly or indirectly become a stockholder in any association or corporation . . . .

In *Village of Moyie Springs, Idaho* v. *Aurora Mfg. Co.*, 353 P.2d 767 (Idaho 1960), a revenue bond case, the Supreme Court of Idaho said:

> It must be clear to the ordinary mind on reading this language, that the framers of the Constitution meant to cover all kinds and character of debts and obligations for which a city may become bound, and to preclude circuitous and evasive methods of incurring debts and obligations to be met by the city or its inhabitants.

---

[1] Revenue bonds are not constitutional. This has been my position since *Purvis* v. *City of Little Rock*, 282 Ark. 102, 110, 667 S.W.2d 936, 940 (1984) (Hickman, J., concurring.). Some revenue bonds are outright frauds on the public. For example, bonds issued to finance the Justice Building, to be paid for with "rent" from the state agencies occupying the building are a mockery of the bond provisions of the Arkansas Constitution. *McArthur* v. *Smallwood*, 225 Ark. 328, 281 S.W.2d 428 (1955); *see also Wells* v. *Clinton*, 282 Ark. 20, 666 S.W.2d 684 (1984). I will change my position when the constitution is changed. Amendment 62 to the Arkansas Constitution, approved by voters on November 6, 1984, which repeals inconsistent provisions in Amendments 13 and 49, as well as other amendments, makes no provision for revenue bonds, and may well have absolutely outlawed them.

Article 8, Section 4 of the Ohio Constitution provides:

> The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or association in this state, or elsewhere, formed for any purpose whatever.

The Supreme Court of Ohio considered this provision, and others similar to those in the Arkansas Constitution, in a case involving two revenue bond issues: one, to obtain credit for a private corporation, and the other, an issue by a public corporation to aid a private corporation for profit. The court said:

> . . . as to each loan, we have a situation where the commission proposes in effect that 'the credit of the state shall *** be given or loaned to, or in aid of' a private 'corporation.' . . . The Ohio Constitution specifically states this 'shall not, in any manner' be done.

In conclusion the court stated:

> We regret the necessity of disagreeing with the legislature and executive branches of our government but our duty under the constitution is clear. We are unanimously of the opinion that the proposed borrowing and lending by the commission in the instant case would represent a giving and loaning of the credit of the State of Ohio in aid of private interests and are prohibited by the express words of . . . the Ohio Constitution.

*Saxbe* v. *Brand*, 176 Ohio St. 44, 197 N.E. 2d 328 (1964).

The Nebraska Constitution provides: "The credit of the state shall never be given or loaned in aid of any individual, association, or corporation." Neb. Const. Art. 8 § 3. The Nebraska Supreme Court interpreted this provision in *Beck* v. *City of York*, 164 Neb. 223, 82 N.W.2d 269 (1957), a revenue bond issue to aid a private corporation. It said:

> It is true that the revenue bonds are not a general liability of the city and they are not subject to payment through the exercise of the taxing power. But they do cast burdens upon the city with reference to their issuance and payment. The

city and its officers are charged with the duty of fixing and collecting the rentals from which the revenue bonds are to be paid . . . *The loan of its name by a city to bring about a benefit to a private project, even though general liability does not exist, is nothing short of a loan of its credit.* The use of the city as a payer of the bonds is intended to give respectability to them because of the general acceptability of cities as a source of bond issues in financial markets. It is a loan of the credit of the city within the meaning of the constitutional prohibition. (Italics supplied.)

We have the same situation before us: Independence County is directly authorized by the state, pursuant to Act 142 of 1975, to obtain a loan using its credit for a private church institution.

In this case we do not have the usual legislative pronouncement that the private enterprise serves a public purpose. For instance revenue bonds issued for a housing project, were justified by a legislative statement that the public would be served since low income families would benefit. *Murphy* v. *Epes*, 283 Ark. 517, 678 S.W.2d 352 (1984). The majority simply concludes "we need not be concerned . . ." because all educational institutions, private religious ones, as well, serve a public purpose.

The Arkansas General Assembly passed a provision in Act 528 of 1981 expressly including private institutions in its definition of "education facilities" as used by Act 142 of 1975. It also restricted the use of public funds to educational programs with a secular purpose. But 11 days later this provision was repealed and a new definition of "education facilities" was substituted which expressly omitted the reference to private institutions and the limit of the use of public funds. Act 827 of 1981. This is the act that controls. *Roberts* v. *Tice*, 198 Ark. 397, 129 S.W.2d 258 (1939). So we have no legislative declaration that a private school can share in bonds to be issued for educational institutions. Nor do we have a restrictive clause. Does the majority presume to include private schools on its own? It took a constitutional amendment to make industry a public matter. Ark. Const. Amend 49.

A purely private enterprise cannot be made a public one without some pronouncement by the general assembly. In *Turner* v. *Woodruff, supra*, we said: "What constitutes public purpose is

for the General Assembly to determine." The fact that Arkansas College is also a liberal arts college, serving its community well, does not make it an institution of the public. Nor does it matter that the aid consists only of lending credit or obtaining a loan.

I find no mention of private schools in the Arkansas Constitution. Indeed, all provisions speak of aiding "common" or public schools. Article 14, section 1 provides that the General Assembly can make laws for the support of common schools. Amendment 53 provides "the State shall ever maintain a general, suitable and efficient system of free public schools . . ." Not only is there no duty to assist private schools financially, it is prohibited. Article 12, Section 5 prohibits obtaining credit for or loaning credit to any corporation, association, institution or individual. If a private school is not an institution, what is it? The majority has simply decided on its own to approve financial aid to private church schools.

Moving to the question of religion, the Arkansas Constitution is more expansive than that of the First Amendment to the United States Constitution. Two provisions read:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can, of right, be compelled to attend, erect or support any place of worship; or to maintain any ministry against his consent. No human authority can, in any case or manner whatsoever, control or interfere with the right of conscience; and no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other.

> Protection of Religion. Religion, morality and knowledge being essential to good government, the General Assembly shall enact suitable laws to *protect* every religious denomination in the peaceable enjoyment of its own mode of public worship. (Italics supplied.)

Art. 2, §§ 24, 25.

Two things are said in these provisions: the right to worship without interference is recognized and, the legislature shall enact laws to protect that right. Where does it say private religious institutions shall be aided? Where is the hint of approval of direct

or indirect financial aid by the state or local government to a private church school? Is the majority saying that since all private church schools can qualify, these constitutional provisions condone it? That is an inconceivable interpretation of these provisions of the Arkansas Constitution, notwithstanding the fact another constitutional provision plainly prohibits aid to private institutions. Art. 12, § 5.

Finally, the majority concludes that since the United States Supreme Court would approve this bond issue, they must, citing *Hunt* v. *McNair*, 413 U.S. 734 (1973). No doubt the United States Supreme Court takes the same benign attitude towards revenue bonds that the majority does. But in the *Hunt* case the Supreme Court emphasized that the state legislation in question contained a provision prohibiting any use of the bond money for "any facility used or to be used for sectarian instruction or as a place of religious worship . . . nor any facility which is used or to be used primarily in connection with any part of the program of a school or department of divinity for any religious denomination." Also emphasized by the court was that the lease agreements executed in that case obligated the institution to restrict the benefits to education programs with a secular purpose. The majority ignores these crucial factual differences between *Hunt* and the instant case. Act 528 of 1981 had a similar restriction and that might have satisfied the U. S. Supreme Court; but it was repealed 11 days later by Act 827. The *Hunt* case cannot, in my judgment, be used as justification for this bond issue.

Arkansas College is a private church college; it cannot be made something else. It can teach, flourish and grow without fear of any interference from the government. Indeed, our constitutions guarantee that right. Where should such schools get money to operate? From private individuals or loans from private institutions; certainly, not from the government. No citizen should be required to pledge support to a private religious institution. Yet that is the effect of this decision. That is what we have come to with this revenue bond business.