Dr. John N. Mangieri, President Arkansas State University P.O. Box 10 State University, AR 72467-0010
Dear Dr. Mangieri:
This is in response to your request for an opinion on the legality of having a nativity scene on state property. Specifically, you indicate that for many years a nativity scene has been placed in the Reng Center during the holiday season. The Reng Center serves as a student center and cafeteria, and is located on the campus of Arkansas State University.
For the reasons that follow, it is my opinion that the legality, or rather the constitutionality, under federal law, of having a nativity scene in the Reng Center will depend upon how it is displayed. If displayed in accordance with federal case law, the placement of a nativity scene on state property is not prohibited under the United States Constitution. A question may arise, however, as to whether the Arkansas Constitution would prohibit this action, even if it would not run afoul of the federal constitution.
Fortunately, with regard to federal law, we are guided in making the determination by a 1989 decision of the United States Supreme Court. See Allegheny County v. Greater Pittsburgh ACLU,492 U.S. 573 (1989). In this case, the Court struck down, as violative of the Establishment Clause of the First Amendment, a nativity scene or creche displayed on the "grand staircase" inside the main part of a county courthouse. The creche was surrounded by poinsettias and included an angel bearing a banner that stated "Gloria in Excelsis Deo!" (Glory to God in the Highest!). The display also bore a plaque that said "This display Donated by the Holy Name Society." The Court noted that although Santa Claus figures and other Christmas decorations were present elsewhere in the courthouse, there were no such decorations on the staircase. The creche was the setting for a program of Christmas carols during lunchtime throughout the holiday season. The Court held that the creche violated the Establishment Clause because it had the effect of "endorsing" religion. No other symbols were included with the creche which would have neutralized the religious message.
In the same decision of the Court, however, another Christmas display was upheld. The Court found that a forty-five foot Christmas tree accompanied by an eighteen foot menorah, placed in the outer archway of a jointly owned city-county building, was constitutional. The display also included a sign which was titled: "Salute to Liberty," and which stated that: "During this holiday season, the city of Pittsburgh salutes liberty. Let these festive lights remind us that we are the keepers of the flame of liberty and our legacy of freedom." The Court found that this display did not have a primary effect of endorsing religion, and any perceived message in that regard had been negated by the particular way both symbols were displayed and by the "Salute to Liberty."
The Court held that the crucial determination in evaluating the constitutionality of a particular Christmas display is whether the display has the appearance or effect of "endorsing" religion.[1] In making this determination, the particular physical setting is critical, and must be judged on its own facts. The Court concluded that the creche, which essentially stood alone in the most prominent part of the courthouse, had the effect of endorsing religion. It also concluded, however, that the Christmas tree, accompanied by the menorah and a sign saluting "liberty" did not have the effect of endorsing religion.[2]
Two federal appeals court decisions handed down after Allegheny
may also be of help in determining what types of Christmas displays will withstand federal constitutional scrutiny. InSmith v. County of Albermarle, 895 F.2d 953 (4th Cir. 1990),cert. denied, U.S., 111 S.Ct. 74 (1990), the court held that the placement of a nativity scene, donated by the Jaycees, on the front lawn of a prominent county office building violated the Establishment Clause. The creche stood alone on the lawn of the building with a sign which stated: "Sponsored and maintained by Charlottesville-Albermarle Jaycees not by Albermarle County."
In Doe v. City of Clawson, 915 F.2d 244 (6th Cir. 1990), however, the Sixth Circuit upheld a Christmas display which consisted of a nativity scene, four evergreen trees with lights and stars, two Christmas gift packages with large bows, a Santa Claus figure standing nearby at the corner of the building, a large "NOEL" sign, and holiday roping on the building, all situated on the lawn near the entrance to City Hall.
In response to your question, therefore, under federal law, the legality of having a nativity scene on state property will depend upon how it is displayed. All of the facts surrounding the display must be evaluated to determine whether the display is constitutional. Although we cannot therefore provide a definitive answer to your question, the cases set out above should be of assistance in making the determination under federal law.
Relevant state constitutional provisions, however, must also be considered. The Arkansas Constitution, at art. 2, § 24, provides as follows:
 All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can, of right, be compelled to attend, erect or support any place of worship; or to maintain any ministry against his consent. No human authority can, in any case or manner whatsoever, control or interfere with the right of conscience; and no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other.
[Emphasis added.]
This provision is only of relevance to the extent it is more restrictive as to governmental practices touching on religion than the federal constitution. Of course, our state constitution could not purport to authorize a state sponsored religious practice where the federal constitution would prohibit it.
There are very few cases construing the constitutional provision above. Justice Hickman, dissenting in Cortez v. IndependenceCounty, 287 Ark. 279, 698 S.W.2d 291 (1985), stated that it was "more expansive than that of the First Amendment to the United States Constitution." 287 Ark. at 289. The majority in Cortez,
however, held that the issuance of revenue bonds, pursuant to a state statute, for the benefit of Arkansas College (a Presbyterian college) did not have the effect of preferring that religious establishment over any other because "[a]ny college sponsored by a church would be entitled to the same kind of bond issue if all statutory requirements were met." 287 Ark. at 284. The majority found that the more serious question arose under the federal constitution's "excessive entanglement" analysis.
It thus appears that an Arkansas court will, under the plain meaning of this language, strike down only laws or actions which have the effect of preferring one religion to the exclusion of others. Arguably, the placement of a creche on state property during the holiday season would have this effect, especially if no other religious symbols are similarly placed during the season or at any time during the year. It is unclear, however, whether art. 2, § 24 pertains only to the enactment of laws (i.e.,
"no preference shall ever be given, by law. . . .") or whether it would prohibit administrative action as well, such as the placement of a creche on state property by university officials. There is simply insufficient interpretive case law for this office to determine this issue.
State officials making decisions with regard to holiday displays, however, should be cognizant of this provision of our state constitution. Even if the federal constitution would permit the placement of a creche on state property (sufficiently surrounded by other secular symbols, or signs, as discussed in the federal cases cited earlier), it is possible that our own state constitution would be construed to prohibit this action, if it is construed to apply to administrative action, and if the display could be deemed to "prefer one religion," namely Christianity, over others.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana Cunningham Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The Court apparently retained what is referred to as theLemon three part analysis for deciding Establishment Clause questions. Under this test, a practice which touches upon religion, if it is to be permissible, must: 1) have a secular purpose; 2) neither advance nor inhibit religion in its principal or primary effect; and 3) not foster an excessive entanglement with religion. The court in Allegheny focused on the second prong of the test and sought to determine if the particular practice constituted an "endorsement" of religion.
[2] See also Lynch v. Donnelly, 465 U.S. 668 (1984), in which the United States Supreme Court upheld a city sponsored display in a private park which included, along with a creche, a Santa Claus house with a live Santa Claus distributing candy; reindeer pulling Santa's sleigh; a live 40 foot Christmas tree strung with lights; statues of carolers in old-fashioned dress; candy-striped poles; a "talking" wishing well; a large banner proclaiming "SEASONS GREETINGS;" a miniature village with several houses and a church; and various "cut-out" figures, including those of a clown, a dancing elephant, a robot, and a teddy bear.