Mr. Richard Weiss, Director Department of Finance Administration P.O. Box 3278 Little Rock, AR 72203-3278
Dear Mr. Weiss:
This is in response to your request for an opinion regarding Act 658 of 1997 ("Act"), which is entitled "An Act to Make an Appropriation to the Department of Finance and Administration-Dispersing Officer for Institutional and Community Development. . . ." The Act appropriates $15 million to the DFA Dispersing Officer to be payable from the Institutional and Community Development Fund ("Fund") "for institutional and community development as determined by the Commission on Institutional and Community Development ["Commission"]." Acts 1997, No. 658, § 1. The Act creates the Commission and authorizes it to manage and distribute the Fund, and adopt necessary regulations. Id., § 2.
You have requested an opinion concerning the constitutionality of this Act. You have asked, specifically:
 Do the provisions of Act 658 of 1997 constitute an unlawful delegation of legislative authority to the Commission on Institutional and Community Development?
You have also asked "whether a public officer may refuse to comply with a state law which the officer reasonably believes to be unconstitutional?"
It is my opinion, in response to your first question, that a court faced with this issue would probably find Act 658 unconstitutional as an unlawful delegation of legislative authority. This office of course possesses no authority to declare a legislative enactment unconstitutional, but rather can only advise how a court would likely treat the issue. A conclusive resolution of the matter thus lies with the courts. The basis for my conclusion that a court would likely find Act 658 unconstitutional is set forth in detail below, but in sum is premised upon the absence of any meaningful legislative guidance in the use of these funds.
It is my opinion that the answer to your second question is, generally, "yes." Please find enclosed a copy of Attorney General Opinion 97-280, issued to Mr. Bobby Wood, Chairman of the Commission, which fully addresses this question.
The primary constitutional provisions which, I believe, are invoked in addressing your first question are few in number, but fundamental in nature:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another [Ark. Const. art. 4, § 1.]
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted. [art. 4, § 2.]
 The legislative power of the people of this State shall be vested in a General Assembly. . . . [amend. 7.]
 No money shall be drawn from the treasury except in the pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years. [art. 5, § 29.]
Article 4 of the Arkansas Constitution (see above) contains the so-called "separation of powers" doctrine which requires that the three branches of government (legislative, executive, and judicial) remain separate and distinct, and that such separation be strictly enforced. See generallyOates v. Rogers, 201 Ark. 335, 144 S.W.2d 437 (1940). The doctrine has long been a part of Arkansas' form of government. Under the classic division of the powers, the legislature makes the laws and appropriates state revenues, the executive administers the laws and expends the appropriations, and the judiciary interprets the laws. See Chaffin v.Arkansas Game Fish Comm'n, 297 Ark. 431, 757 S.W.2d 950 (1988),Federal Express Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979), andHooker v. Parkin, 235 Ark. 218, 357 S.W.2d 534 (1962); see also State exrel. Guste v. Legislative Budget Committee, 347 So.2d 160 (La. 1977);McManus v. Love, 179 Colo. 218, 499 P.2d 609 (1972).
Clearly, the legislature cannot delegate its power to make laws. The functions of the legislature must be exercised by it alone. Walden v.Hart, 243 Ark. 650, 420 S.W.2d 868 (1967). The prohibition against a delegation of legislative power is a necessary outgrowth of the fundamental theory of separation of governmental functions. 16 Am. Jur. 2dConstitutional Law § 335 (1979). It has been noted, however, with regard to the constitutional division of powers, that "[a]ll authorities are in agreement that it is impossible to fix exact limits in the area of constitutional separation of powers. All states approach the problem on a case-by-case basis." State ex rel. Meyer v. State Board of Equalizationand Assessment, 185 Neb. 490, 176 N.W.2d 920, 926 (1970). Nevertheless, with regard to the appropriation power, it is well-settled that this is a function belonging exclusively to the General Assembly. As stated by the Arkansas Supreme Court in Dickinson v. Clibourn, 125 Ark. 101,187 S.W. 909 (1916):
 [T]he framers of the Constitution intended to place an unmistakable limitation upon the authority of public officials in paying out public funds, and to declare that all the State funds which are within the purview of the provision [Ark. Const. art. 5, § 29, supra] must be held in the treasury, until a specific appropriation thereof has been made by the Legislature. The power of the General Assembly with respect to the public funds raised by general taxation is supreme. . . .
125 Ark. at 106 (emphasis added). See also Meyer v. State Board ofEqualization and Assessment, supra, 176 N.W.2d at 926 ("The legislature has plenary or absolute power over appropriations[;]") and In re Opinionof the Justices, 302 Mass. 605, 19 N.E.2d 807, 813 ("However difficult it may be to draw the line between legislative and other powers, there can be no doubt as to the side of the line upon which the power of appropriation falls.")
The "control of the purse" is thus clearly a legislative function. Stateex rel. Norfolk Beet-Sugar Co. v. Moore, 50 Neb. 88, 69 N.W. 373. There must be a "specific appropriation" (Dickinson, supra, and Ark. Const. art 5, § 29 supra), and the legislative power of appropriation may not be delegated to another branch of government. See Hooker v. Parkin, supra,
and Gregory v. Rollins, 230 S.C. 269, 95 S.E.2d 487 (1956); see alsogenerally Walden v. Hart, supra. As pointed out in State ex rel. Andersonv. Fadely, 180 Kan. 652, 308 P.2d 537 (1957), "[e]xcept as is restricted by the constitution, the legislature has the exclusive power to directhow, when, and for what purpose the public funds shall be applied in carrying out the objects of the state government." 308 P.2d at 540
(emphasis added).
This is not to say, however, that the legislature cannot vest certain discretion in the executive branch to carry out the legislative mandate. Indeed, as noted above, the expenditure of appropriated monies, as opposed to their appropriation, is a function properly within the province of the executive branch. It has thus been noted that:
 [the legislature] cannot through the power of appropriation exercise or invade the constitutional rights and powers of the executive branch of the government. . . . [T]he Legislature cannot be permitted to hamper the necessary operation of constitutional officers by unreasonable appropriation restraints.
Meyer, supra, 176 N.W.2d at 500.
The usurpation of executive powers is thus a potential result of an appropriation or other legislative measure which directs expenditures or otherwise allocates resources. See, e.g., Op. Att'y Gen. 91-020
(regarding the purchase of commodities and services with appropriated funds). The issue before us is, however, I believe, at the opposite end of this spectrum. Act 658 of 1997 does not raise any concerns regarding potential interference with the operations of another department of government. Rather, a so-called "unlawful delegation" question arises, in my opinion, due to the absence of any parameters to circumscribe the exercise of the Commission's authority under the appropriation.
With regard to the exercise of executive discretion in the area of expenditures, it should be noted that there is support for the general proposition that the legislature can choose to permit the executive "to exercise judgment and discretion within a wide field in the expenditure of money appropriated for a given object to accomplish the general purposes of the appropriation." In re Opinion of the Justices, supra,19 N.E.2d at 815. It is apparent from a closer review of Opinion of theJustices, however, that the object of the appropriation in that case was, in fact, specifically limited. Id. at 814-815. Thus, there were standards guiding the administrative officials in their exercise of discretion. Even in those instances in which specific guidelines or standards have been deemed unnecessary, based upon the need for administrative flexibility under today's complex governmental and economic conditions (see, e.g., Menorah Medical Center v. Health andEducational Facilities Authority, 584 S.W.2d 73 (Mo. 1979)), there has nevertheless been some statement of legislative purpose or some guidance concerning the power or authority of the administrative agency. See,e.g., Menorah, supra; Vermont Educational Buildings Financing Agency,127 Vt. 262, 247 A.2d 68 (1968); DeArmond v. Alaska State DevelopmentCorporation, 376 P.2d 717 (1962). See also Wells v. Clinton,282 Ark. 20, 666 S.W.2d 684 (1984). There was, therefore, nothing ambiguous or unclear about the particular grant of authority. In Wells v. Clinton,supra, for example, the purpose of the appropriation for certain capital improvements and State Building Services' powers and duties were clear from the legislation establishing State Building Services, and from the particular appropriation itself.
The absence of any such statement of purpose or other information, in either Act 658 or in some other legislative provision, to guide the Commission in exercising its discretion to manage and distribute the Fund is, in my opinion, problematic. My research has yielded no decisions upholding a delegation of authority such as this. Nor have I been able to identify any standards or guidelines by implication or by common usage or by reference to any clear statement of purpose. The phrase "institutional and community development" has no set meaning in law or in common usage.See generally D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977) (regarding the vagueness of language in a statute prohibiting public officials from accepting gifts). These terms are not so well-defined as to impart any statement of policy or other guidance. In the absence of any guidance concerning how the appropriated funds will be used, it is my opinion that a court may be receptive to the argument that there is no distinct statement of purpose, contrary to Ark. Const. art. 5, § 29.See, e.g., McCutchen v. Huckabee, 328 Ark. 202, ___ S.W.2d ___ (1997).
It is of course well-settled, as a general principle, that the legislature may delegate to executive officers "the power to determine certain facts, or the happening of a certain contingency, on which the operation of the statute is by its terms made to depend." State v. Davis,178 Ark. 153, 156, 10 S.W.2d 513 (1928). But it appears that the legislative enactment must still "declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, . . . with such degree of certainty as the nature of the case permits. . . ."Bauer v. S.C. State Housing Authority, 271 S.C. 219, 246 S.E.2d 869, 876
(1978). It is true, as well, that the so-called "guidelines rule" is, as stated by the Arkansas Supreme Court, "substantially liberalized . . . when it is difficult to lay down a definite or comprehensive rule[.]"Walden v. Hart, supra, 243 Ark. at 653.[1] But some guidelines are, nevertheless, essential, in my opinion, to withstand a constitutional attack. Otherwise, the legislation can be attacked as vesting "unbridled discretion." Walden, 243 Ark. at 652. See also generally Patton v.Ragland, 282 Ark. 231, 668 S.W.2d 3 (1984). Such a vesting of discretion constitutes an unlawful delegation of legislative authority, and is fatal to an enactment. Id.
The significance of this issue and the absence of any Arkansas case directly on point signify the need for a court's conclusive resolution of the matter. The foregoing principles of law and observations concerning Act 658 of 1987 compel me to conclude at this juncture, however, that the Act is constitutionally suspect under the constitutional separation of powers doctrine.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] See, e.g., Wells v. Clinton, supra (regarding no requirement that the location and description of public buildings selected by the State Building Services be specified) and Hooker v. Parkin, supra,235 Ark. at 222 (upholding the broad powers of the State Highway Department to determine the need for employees and their individual salaries as "necessary for the orderly and efficient operation of the . . . Department. . . .")