The Honorable Jim Argue State Senator 5300 Evergreen Little Rock, AR 72205
Dear Senator Argue:
You have requested an Attorney General opinion concerning the Governor's Distinguished Scholarship program, which is codified at A.C.A. § 6-82-301et seq.
This program awards scholarships to Arkansas students who score 32 or above on the American College Test (ACT), 1410 or above on the Scholastic Aptitude Test (SAT), or who are selected as finalists in the National Merit Scholarship competition that is conducted by the National Merit Scholarship Corporation. A.C.A. § 6-82-302(9), -305(b). Recipients of the scholarship receive the payment of full tuition, room and board, and mandatory fees at the public or private institution of their choice within the state of Arkansas. (Some institutions outside the state of Arkansas may be chosen for certain specified fields of study.) A.C.A. §6-82-312, -302. The scholarship funds are distributed from the state directly to the chosen institution by electronic transfer. Governor's Scholars Program Rules and Regulations, Rule 5(I)(A). The funds are then disbursed "to the student according to the individual institution's disbursement procedures." Id. This provision is interpreted to mean that the funds are applied to the student's account with the institution. Any excess funds are paid to the student. Under the rules and regulations governing the program, the institutions to whom monies are paid are required to make certain reports to the state regarding the receipt of the funds and the enrollment status of the scholarship recipient, but these institutions are not restricted in their uses of these funds, once received.
You have presented the following question about this scholarship program:
 Do the Arkansas and United States Constitutions permit the payment of state funds for student financial aid to students who attend independent, not-tax-supported colleges and universities in the state? More specifically, do these payments violate constitutional provisions relating to the relationship between church and state?
I have answered this question and other related questions in Attorney General Opinion No. 1999-444. Rather than reiterating the answer here, I have attached a copy of that opinion for your review.
I note that in addition to referencing the U.S. Constitution, your question referenced the Arkansas Constitution, which was not referenced in the questions addressed in Opinion No. 1999-444.
The religion clauses of the Arkansas Constitution state:
24. Religious liberty.
 All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences; no man can, of right, be compelled to attend, erect or support any place of worship; or to maintain any ministry against his consent. No human authority can, in any case or manner whatsoever, control or interfere with the right of conscience; and no preference shall ever be given, by law, to any religious establishment, denomination or mode of worship above any other.
25. Protection of religion.
 Religion, morality and knowledge being essential to good government, the General Assembly shall enact suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship.
Ark. Const., Art. 2, §§ 24 and 25.
Although the above-quoted religion clauses from the Arkansas Constitution are substantially different than the religion clauses of the U.S. Constitution, there is no indication that they are more restrictive than the religion clauses of the U.S. Constitution. See Lendall v. Cook,432 F. Supp. 971, 976 (E.D. Ark. 1977); Cortez v. Independence County,287 Ark. 279, 698 S.W.2d 291 (1985). I therefore find that it is not necessary to conduct a separate analysis of the issues you have raised under the Arkansas Constitution.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
Enclosure